SCHMIDT, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 31—November 17, 1914.*

*Criminal law: Homicide: Set-guns: Degree of offense: Manslaughter: Murder in second degree: Statute construed: "Any other purpose:" Instructions to jury.*

1. Where all the elements necessary to constitute the offense of setting a gun under sec. 4394, Stats., existed, and the death of a person was caused by the discharge of such gun, the homicide cannot be deemed justifiable or excusable but is at least manslaughter in the second degree; and the killing of a person by means of a set-gun may be a higher crime, depending on the intent of the person setting it or other facts characterizing the act.
2. Setting a gun to frighten boys who were likely to enter the premises for the purpose of stealing apples is within the terms of sec. 4394, Stats., which makes it an offense to set a gun "for the purpose of killing game of any kind . . . or for any other purpose."
3. Where, upon the undisputed evidence, the defendant was at least guilty of manslaughter in the second degree under sec. 4394, Stats., there was no error in excluding from the jury's consideration any crime of less degree; nor, there being evidence tending to show that the offense was of higher degree, was it error to charge that defendant was guilty of some crime and that it was for the jury to determine of which crime he was guilty.
4. In such a case it was not error to charge: "The jury have the power, if they see fit, to acquit the defendant of all crime, but in case you should do so you would disregard the undisputed facts and the law applicable to this case."
5. Defendant having set a gun in his orchard in such a way that its contents would probably be discharged against any person coming in contact with a wire attached to the trigger and extended for some distance near the ground, and there being evidence of malice, deliberation, depravity of mind evincing disregard for human life, and intent to injure whoever might enter the orchard for the purpose of stealing apples, a conviction of murder in the second degree under sec. 4339, Stats., is sustained.

　　TIMLIN, J., dissents.

ERROR to review a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Affirmed.*

For the plaintiff in error there were briefs by *Brown, Pradt*

& *Genrich,* and oral argument by *L. A. Pradt* and *F. W. Gen-rich.*

For the defendant in error there was a brief by the *Attorney General, Edward P. Gorman,* district attorney, and *M. B. Rosenberry,* assistant district attorney, and oral argument by *Mr. Rosenberry.*

KERWIN, J.   The information in this case charged the plaintiff in error, hereinafter called defendant, with murder in the first degree of one George Kramer.   The jury found the defendant guilty of murder in the second degree and judgment was entered accordingly.   The case is here on writ of error.

The evidence shows that the defendant set a gun in his orchard loaded with powder and No. 3 shot, cocked, with a wire attached to the trigger of the gun, running back over a spool and then extending along in range with the barrel of the gun and for some distance in front of the muzzle and about eight inches from the ground, so that contact with the wire would be likely to discharge the contents of the gun against any person coming in contact with the wire.   The deceased seeing the wire took hold of and pulled it and received the charge of shot in his left hip and left arm at the elbow, from the effects of which he died some time thereafter.

The case was submitted to the jury upon the following grounds: (1) Whether defendant was guilty of murder in the first degree; (2) whether defendant was guilty of murder in the second degree; and (3) whether the defendant was guilty of manslaughter in the second degree.

The following errors are assigned:

"1. The court erred in refusing to give the instructions to the jury upon manslaughter in the fourth degree requested by the defendant.

"2. The court erred in refusing to give the instructions to the jury upon excusable homicide requested by the defendant.

"3. The court erred in charging the jury that the defendant was guilty of some crime; that it was unlawful for the defendant to set the gun as he did, and that if such setting of the gun caused the death of George Kramer, then the defendant was guilty of some degree of murder or manslaughter. And in charging the jury that the facts in the case, in any view of them, forbid the conclusion that the killing of George Kramer by the set-gun in question was either justifiable or excusable. And in charging the jury that they had the power, if they saw fit, to acquit the defendant of all crime, but in case they should do so they would disregard the undisputed facts and the law applicable to this case. And in submitting, by the charge, to the jury the consideration only of the question whether the defendant was guilty of murder in the first degree or in the second degree, or manslaughter in the second degree. And in charging the jury at all upon the subject of murder in either the first or second degree, or manslaughter in the second degree. And in charging the jury that they should find the defendant guilty of manslaughter in the second degree if they did not find him guilty of murder in either the first degree or in the second degree.

"4. The court erred in denying the motion of the defendant to set aside the verdict and for a new trial."

The first three assignments of error may be treated together. There was no error in refusing to give the instructions to the jury on manslaughter in the fourth degree or upon excusable homicide. The court instructed the jury that they might consider only the question of murder in the first degree, murder in the second degree, and manslaughter in the second degree.

The argument of counsel for defendant is that the court erred in refusing to instruct on manslaughter in the fourth degree and excusable homicide. It is insisted that because one might set a gun for the purpose of committing murder and hence be convicted of murder upon a proper showing though committed by a set-gun, by parity of reasoning it follows that where death results from the discharge of a set-gun it would be proper to show, for the consideration of the jury, facts relating to its setting that might lead them to the conclusion that

the defendant was guilty of some degree of manslaughter or homicide less than manslaughter in the second degree fixed by the set-gun statute.

It is quite true that a gun might be set for the purpose and with the intent to commit murder, and upon conviction of murder punishment should not be confined to manslaughter in the second degree, but for the degree of murder found, and therefore it was proper upon the evidence in the present case to submit to the jury upon sufficient evidence the two degrees of murder.  But it does not follow that because murder may be committed by means of a set-gun the defendant may escape with a lighter punishment than for manslaughter in the second degree where all the elements necessary to constitute the offense of setting a gun under sec. 4394, Stats., are proved, and death is caused by the discharge of such gun.

Whether punishment in case of death by a set-gun could in any case be reduced below manslaughter in the second degree we need not here determine, for we are convinced that upon the undisputed facts in the instant case the court below was clearly right in refusing to submit a lower degree of manslaughter or homicide.   The statute provides:

"Section 4394.  Any person who shall set or fix in any manner whatever any gun, pistol or other firearm, or any spring gun for the purpose of killing game of any kind by coming in contact therewith or with any string, wire or other contrivance attached thereto, by which the same may be discharged, or for any other purpose, shall be punished by imprisonment in the state prison not less than six months nor more than three years; and if the death of any person is caused thereby he shall be deemed guilty of manslaughter in the second degree."

It is argued that the evidence shows that the gun was set to protect property and frighten boys who were likely to enter the premises for the purpose of stealing apples, and that such purpose does not fall within the provisions of the above section.   The statute applies to setting a gun for the purpose of

killing game, *"or for any other purpose."* Setting a gun to frighten boys is within the terms of the statute.

It is plain that the object of the legislature in passing this statute was to prevent the setting of guns which might inflict injuries and be dangerous to life or limb, and in case persons violating the statute thereby caused the death of a human being they should be held guilty of manslaughter in the second degree, though the gun was set for an innocent purpose. The statute forbids the setting of a gun for the purpose of killing game, "or for any other purpose." The intent of the legislature was to prevent the setting of guns generally. The words "or for any other purpose" were evidently not intended to have their general meaning disassociated from the context of the statute, because such a meaning would include intentional and all other felonious killing of a human being, which the legislature manifestly did not contemplate. Reading the words "or for any other purpose" in their connection with the other parts of the statute, their meaning naturally is to be construed as if it read "for any other similar purpose," that is, a purpose other than where there was a design to effect the death of or physical injury to another, or the wrongful destruction of property, as well as where a gun was set with a purpose evincing a depraved mind regardless of danger to human life. In these latter cases, if death results from the setting of the gun the killing would come within the law regulating homicides, but where such death is not one of these, then the statute makes it manslaughter in the second degree and it cannot be less. So if the defendant merely purposed to frighten boys, and that was an innocent purpose, then he was guilty of manslaughter in the second degree and could not be convicted of a lesser offense.

The court below proceeded upon the theory that if the jury failed to find the defendant guilty of a higher degree of offense than that prescribed by sec. 4394, Stats., he should be con-

victed of manslaughter in the second degree as prescribed by the statute. In this view we think the court was correct. The evidence is undisputed that the defendant was at least guilty of manslaughter in the second degree as prescribed by sec. 4394, and therefore it was not error to refuse to submit to the jury a lower degree of manslaughter or homicide.

The evidence shows that the defendant deliberately set the gun, he says, to frighten boys coming into the orchard to steal apples. But it was so set as to discharge its contents into any person going to the apple tree and coming in contact with the wire attached to the trigger of the gun.

Counsel for defendant contend that the defendant had a right to set the gun for the purpose of protecting his property, if there was no intent to commit any offense. But the statute makes the setting of the gun an offense regardless of whether it was set with intent to do injury to another or not. Counsel complain of the following parts of the charge:

"If you should have a reasonable doubt from the evidence in this case that the defendant did not intend to kill any human being by means of the gun and apparatus which he set in his orchard, and if you should also have a reasonable doubt that the act of setting the gun and adjusting the apparatus did, under all the circumstances in which the defendant acted, constitute an act imminently dangerous to others and evincing a depraved mind regardless of human life, and should believe from the evidence that the defendant intended only to frighten persons who might come into his orchard, yet that he nevertheless produced the death of George Kramer, then you should find the defendant guilty of manslaughter in the second degree."

"Upon the undisputed facts in this case it is clear that the defendant is guilty of some crime, and it is for the jury to determine of which crime he is guilty."

"It was unlawful for the defendant to set and fix the gun in question loaded, cocked, and adjusted with the apparatus for firing the same in the manner and place in which he admits he did set and fix it, and if by so setting and fixing the gun in question he produced the death of George Kramer in

the manner in which has been testified to on this trial, then the defendant is guilty of some degree of murder or manslaughter."

"If the defendant set and fixed and adjusted the gun in question solely for the purpose of scaring away trespassers and without intent to physically injure them, he thereby committed a crime under this statute, and if he thereby produced the death of a human being the crime was so much more serious. If in setting, fixing, and adjusting said gun and apparatus he intended to kill any human being or to seriously injure any human being, that is, do him great bodily harm, then the defendant, in causing the death of George Kramer by means of said gun and apparatus, became guilty of some degree of murder or manslaughter."

"But the facts in this case, in any view of them, forbid the conclusion that the killing of George Kramer by the set-gun in question was either justifiable or excusable."

"The jury have the power, if they see fit, to acquit the defendant of all crime, but in case you should do so you would disregard the undisputed facts and the law applicable to this case."

There was no prejudicial error in the parts of the charge complained of. The undisputed evidence shows that the defendant violated the statute in setting the gun. The learned trial judge below in charging the jury said:

"A large share of the facts involved in this case are not in dispute. It has been proved without dispute that on August 24, 1913, about noon, George Kramer, a young man in the eighteenth year of his age, while on the premises of the defendant, *William Schmidt,* in this county, and in an orchard on said premises, came in contact with a wire stretched horizontally a little above the ground and thereby discharged a loaded shot gun which had been set and affixed to stakes in the orchard and received a large share of the contents of said loaded gun in his left thigh between the knee and the hip and in his left arm, above and below the elbow, and thereby he was seriously wounded; that without ever recovering therefrom the said George Kramer died on or about November 4, 1913, and that the primary cause of his death were the gunshot wounds in question; that the defendant *Schmidt* had two

days before the shooting loaded said gun, taken it to said orchard, and set and fixed the same in place in the orchard where it was at the time when it was discharged and fixed and adjusted a wire or wires extending from the trigger of the gun for a considerable distance so adjusted that contact with the wire would pull the trigger and cause the discharge of the gun; and that said gun was partly concealed where it was set by means of three old wash boilers set up at the sides and above as described in the evidence."

This is a fair statement of the evidence upon the points covered. In addition to this there was evidence of malice, deliberation, depravity of mind evincing disregard for human life, and intent to injure whoever might enter the orchard for the purpose of stealing apples. Under these circumstances there was ample evidence to support the verdict of the jury under sec. 4339, Stats., which provides:

"Such killing, when perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life, without any premeditated design to effect the death of the person killed or of any human being, shall be murder in the second degree."

And the evidence being undisputed that defendant was guilty of manslaughter in the second degree under sec. 4394, Stats., there was no error in the charge in that regard. *Cupps v. State,* 120 Wis. 504, 522, 97 N. W. 210, 98 N. W. 546.

Error is assigned because the court below denied a new trial. It is argued that the evidence was not sufficient to support the verdict. We have heretofore referred to the evidence and a recital of it at length would serve no useful purpose. Under this head counsel for defendant discuss the alleged error in the charge relating to manslaughter in the second degree and insist that the jury must have been prejudiced thereby. As before observed, the charge in this respect was correct, and how it could have prejudiced the jury we are unable to see.

Error is also assigned because the court refused to charge

on excusable homicide and manslaughter in the fourth degree. Sufficient has already been said to show that there was no error in this regard.

The undisputed evidence showing that the defendant was at least guilty of manslaughter in the second degree under sec. 4394, Stats., there was no error in refusal to charge on a lower degree of offense. We are unable to see that there was any error in the charge or refusal to charge.

We have carefully examined the record and find no grounds for a new trial. The record shows that the case was carefully tried by the learned judge below and fairly submitted to the jury, and we discover no prejudicial error in the record.

*By the Court.*—The judgment is affirmed.

TIMLIN, J. (*dissenting*). I think that under the maxim *"ejusdem generis"* the words "or for any other purpose" found in the set-gun statute (sec. 4394) must be limited to purposes similar to "the purpose of killing game." The purpose of killing game in the proper season is not an unlawful or criminal purpose. Out of season it is unlawful and at no time is it a felonious purpose. But the "other purpose" mentioned in the statute is not by this maxim of construction required to be exactly like the purpose of killing game, but only a purpose of the same class, genus, or family of purposes. The dominant purpose of killing game with a set-gun is either to gain ownership of the hide and carcass or to protect crops or domestic animals against the depredations of game animals. Both of these purposes may concur. The one is to acquire property, the other to protect property already acquired. To protect the cabbage patch against deer, the corn field against raccoons, the wheat field against domestic animals, or the chickens and ducks against foxes, mink, and otters, or the apple crop against boys, are purposes of a similar kind, if there is no intention to do bodily injury to the boys. The law relating to set-guns is well collected in the notes to *State v. Barr*

(11 Wash. 481, 39 Pac. 1080) 29 L. R. A. 154. Under our statute, if the accused set the gun for any of the purposes above mentioned and if the death in question, although not intended, was caused by his act in so doing, he would be guilty of manslaughter in the second degree. But here there are two questions of fact involved: (1) With what intent was the gun set? (2) Was the death of the boy caused by setting the gun or did it result from some intervening cause? (He was injured August 24, 1913, and died of a hemorrhage from the wound November 4, 1913.) The proper construction of this statute is that it elevates all homicides resulting from a set-gun, where no homicide is intended, to manslaughter in the second degree. But where a gun is set for a felonious purpose and homicide results, the graver crime is not by this statute reduced to manslaughter in the second. degree.

The accused was charged with murder in the first degree and convicted of murder in the second degree. Here questions of fact were also involved. Among other instructions the court gave the following to the jury:

"Upon the undisputed facts in this case it is clear that the defendant is guilty of some crime and it is for you to determine of which crime he is guilty. . . . But the facts in this case, in any view of them, forbid the conclusion that the killing of George Kramer by the set-gun in question was either justifiable or excusable. . . . The jury have the power, if they see fit, to acquit the defendant of all crime, but in case you should do so you would disregard the undisputed facts and the law applicable to this case."

This jury had been sworn according to sec. 4692, Stats., to "well and truly try the issue between the state of Wisconsin and the defendant, . . . according to evidence." To me the above instructions are equivalent to directing a verdict of guilty. True, the court gives the jury the alternative of committing perjury, that is, disregarding the undisputed facts and the law applicable to the case, if they choose. If it is to be the law of this state that a trial judge may direct a jury to

bring in a verdict of guilty in a criminal case, so be it. But until it is authoritatively decided that a judge may do so I cannot bring myself to approve the foregoing instructions upon any pretense that they are not the equivalent of directing a verdict of guilty. I think the judgment should be reversed and a new trial awarded.