# THE STATE v. R. F. BECKHAM, Appellant.

### Division Two, December 31, 1924.

1. **CULPABLE NEGLIGENCE**: Trap Gun: Justifiable Homicide. Where defendant set a loaded and cocked gun in his chilli stand, containing six dollars' worth of goods, with a string attached to its trigger and to a part of a window in such a way that when the window was raised the trigger would be drawn and the gun discharged, and a youth opened the window in the night-time and was killed by the discharge from the gun, defendant acted at his peril, even though he did not intend death, but only to scare away intruders, and cannot successfully rely upon justification, unless it can be said, as a matter of law, that, if he had been personally present and killed deceased with said gun, he was excusable on the ground of justifiable homicide, which means that he is compelled to satisfy the jury that he used no more force than was reasonably necessary in repelling an attempt of deceased to enter the premises for the purpose of committing an intended burglary. Deceased, in attempting to enter the building to commit any kind of a crime, would have been guilty of burglary in the second degree, and defendant, if personally present, would have had a legal right to arrest him, but not to use any more force than was reasonably necessary to accomplish his arrest; and where deceased did not enter the building, and was not armed with a gun, pistol, burglars' tools or even a pocket knife, it cannot be said, as a matter of law, that defendant was justified in killing him, for, under such circumstances, if defendant had been present and armed with a gun, the jury might conclude that there was no reasonable necessity for killing deceased until he had, at least, entered the building.

2. ———: ———: ———: Reasonable Force: Question for Jury. Whether defendant in killing deceased used more force than was reasonably necessary is a question for the jury unless the conceded facts warrant the court in declaring as a matter of law that his act was justifiable homicide; and it is manifest that a loaded and cocked shotgun, whose trigger is tied by a string in such a way that, when the window is raised, the gun will be discharged, will not refrain from using no more force than is reasonably necessary in repelling an assault by any and every person who attempts to open the window.

3. ———: ———: Information. The information, set out in full in the statement and being an attempt to charge defendant with cul-

State v. Beckham.

pable negligence and manslaughter by means of a trap-gun, is not skillfully drawn, but contains all the elements necessary to apprise defendant of the nature and cause of the accusation, and is sufficient to support a conviction.

4. ———: Instruction: **Defendant's Intention.** Notwithstanding defendant testifies that he placed the loaded and cocked gun in front of the window, with a string tied to its trigger in such a way that if the window were opened the gun would be discharged, for the purpose of scaring away intruders, with no intention of hurting anyone, and that he so placed it that it did not point towards the window, but pointed above and to the right of the window, and that it slipped from its position and fell to one side, the court properly submitted to the jury the question whether he was guilty of culpable negligence in so placing the gun that it slipped from the position in which he placed it and killed a seventeen-year old boy on the outside. It was defendant's duty in placing the gun to exercise such care and caution as an ordinarily careful and prudent man would exercise under such circumstances, and the very fact that the gun slipped shows that, in a matter involving human life, it had been carelessly and negligently placed, and the verdict of the jury, assessing his punishment at six months' imprisonment, shows that the jury found he did not intend to shoot or hurt anyone, but nevertheless was guilty of culpable negligence.

Citations to Headnotes: 1 to 4, Homicide: 1, 30 C. J. pars. 267, 570, 573; 2, 30 C. J. pars. 570, 573; 3, 30 C. J. par. 285; 4, 30 C. J. par. 593.

Appeal from Jasper Circuit Court.—*Hon. S. W. Bates, Judge.*

AFFIRMED.

*George V. Farris, Kelsey Norman* and *Frank H. Lee* for appellant.

(1) Under the provisions of Section 3235, Revised Statutes 1919, the court should have instructed the jury to acquit defendant, for the reason that at common law the killing of deceased under the circumstances was justifiable or excusable. R. S. 1919, sec. 3235; State v. Moore, 31 Conn. 479, 83 Am. Dec. 159; State v. Marfaudille, 48 Wash. 117, 15 Ann. Cas. 584; 1 Thompson on Negligence, sec. 967; Wharton, Homicide (3 Ed.)

p. 789; Kelley Cr. Law & Proc. (3 Ed.) sec. 515; R. S. 1919, sec. 3236. (2) Instruction 3 given by the court over the objection and exception of the defendant did not correctly define culpable negligence when applied to the facts in the case, and required the jury to convict if the defendant carelessly and negligently set the spring gun, and leaves out entirely the issue whether the gun was accidentally discharged. State v. Horner, 266 Mo. 109; State v. Irvine, 52 So. (La.) 567. Instruction numbered 4 is clearly erroneous under all the decisions of this court, in not properly declaring the law, invading the province of the jury, assuming disputed facts, and being in effect a direct command to convict the defendant. State v. McNamara, 212 Mo. 150; State v. Sauerbarger, 64 Mo. App. 129; People v. Conboy, 113 Pac. 703; Bauer v. State, 107 Pac. 525. (3) The demurrer to the indictment should have been sustained as the same was insufficient in law to charge any offense. State v. Lockwood, 119 Mo. 463.

*Jesse W. Barrett,* Attorney-General, *Geo. W. Crowder,* Assistant Attorney-General, for respondent.

(1) The information in this case is inartificially drawn, but it contains all the necessary elements to apprise appellant of the nature and character of the charge against him and to which he was called upon to answer. This is all that is required of an information. Sec. 3236, R. S. 1919; State v. Watson, 216 Mo. 420. (2) The court properly refused appellant's request for a peremptory instruction to acquit. The question of guilt or innocence was one for the jury under both the law and the evidence. 13 R. C. L., p. 853, sec. 155; State v. Green, 19 A. L. R. 1431, 110 S. E. (S. C.) 145; Pierce v. Commonwealth, 28 A. L. R. 864; State v. Barr, 29 L. R. A. 154, 48 Am. St. 890; State v. Marfaudille, 14 L. R. A. (N. S.) 346, 15 Ann. Cas. 584; Simpson v. State, 31 Am. Rep. 1; United States v. Gilliam, 25 Fed. Cas. 1319. The right of one to protect his property against

intruders, even a burglar (and for this purpose to use force as may be used against him) cannot be construed, under the best and most enlightened authority, to mean that a man may construct an instrument of death, like a loaded and cocked spring gun, merely for the purpose of guarding, generally, his property, in an isolated building or place apart from his habitation. (3) Looking at this case from appellant's theory, according to his testimony, that he had not intended to take life, but only sought to frighten intruders, and for this purpose rigged up his gun within his chilli shack so as not to point it directly toward the window, and that it would not have shot through the window had it not slipped from its original position, the question is still one for the jury as to whether appellant was guilty of culpable negligence, first in erecting a spring gun for that purpose, or second, in the manner of its erection. (4) Instruction 3 correctly defines culpable negligence. State v. Weisman, 256 S. W. 740; State v. Horner, 266 Mo. 109; State v. Emory, 78 Mo. 77. (5) Instruction 4, read in connection with the instruction defining culpable negligence, was a correct declaration of the law under the facts in this case. It could not be distorted into a command to convict appellant. (a) Taken on the theory, which is supported by modern authority, that appellant had no right to set a loaded spring gun for the protection of his property, described by the evidence, even though the gun was securely set, the instruction is correct; and, taken on appellant's theory, under his own evidence, that he propped the gun, or tried to, in such a manner that it would not shoot through the window, and that it slipped from the position in which he had placed it, and did shoot through the window with fatal results, the instruction is correct in that it submits to the jury the question of appellant's culpable negligence. Cases supra.

RAILEY, C.—On September 12, 1923, the Prosecuting Attorney of Jasper County, Missouri, filed in the circuit court of said county, a verified information,

which, omitting caption, signature and verification, reads as follows:

"Roy Coyne, Prosecuting Attorney within and for the County of Jasper, in the State of Missouri, upon his oath, informs the court and charges that on or about —— day of May, 1923, in the County of Jasper and State of Missouri, R. F. Beckham with force and arms in and upon one —————— Windsor, feloniously, carelessly, recklessly and with culpable negligence did then and there make an assault, and the said R. F. Beckham was then and there in charge of and in control of a chilli stand located on the northeast corner of Fourth and Grand Avenue in the city of Joplin, Missouri, and did operate and control said chilli stand and did hold dominion over and control all fixtures and appurtances attached to the chilli stand therein located, and that the said R. H. Beckham did feloniously, carelessly, recklessly, and with culpable negligence construct and contrive and maintain a spring trap-gun so attached to a north window in the said chilli stand, said gun being so loaded with shot and shell and powder as to and did, when exploded, hit the said —————— Windsor in the head, and then and there feloniously, carelessly, recklessly and with culpable negligence the said blows, shock and concussion as exploded by said spring trap-gun, did kill the said —————— Windsor, and that the spring trap-gun so maintained as aforesaid in the manner and form and by means aforesaid then and there feloniously, carelessly and with culpable negligence did kill and slay, and against the peace and dignity of the State."

Defendant was formally arraigned and entered a plea of not guilty. He demurred to the information, and his demurrer was overruled on October 10, 1923. He was tried before a jury and the latter, on the date last aforesaid, returned the following verdict:

"We, the jury, find the defendant guilty of manslaughter and assess his punishment at six months in the county jail."

Motions for a new trial and in arrest of judgment were filed, overruled, judgment entered, and an appeal granted defendant to this court.

The act of culpability, as alleged in the information, was that appellant feloniously and recklessly, without regard to the lives or safety of others, placed a loaded shot-gun in such a position and manner, on the inside of his chilli stand in Joplin, as to cause said gun to be fired or discharged by the movement or opening of a window in the north part of said building. The chilli stand was described as a small house or "shack," about ten feet wide by sixteen feet long, located at or near Fourth and Grand Streets, in Joplin, Jasper County, Missouri. This constituted appellant's place of business, where he sold chilli and other prepared foods and drinks. In the back, or north end of this building, was a glass window consisting, presumably, of one sash. This window was fastened at the top by hinges, and was hung, so that it would open outward from the bottom. A number of thefts had been committed in this place, according to appellant's testimony, which, although not reported to the officers of the law, induced appellant to set the trap-gun inside the shack for the purpose, as he said, of "guarding" the place.

The facts, as stated by counsel for respondent, are substantially correct, and we adopt the same as part of our statement, to-wit:

It is to be gathered from the evidence that the gun was placed in a position on a counter inside the building so the muzzle would point toward the window. The gun was propped with rocks so as to prevent the trigger from being tripped until the window was opened, and there it remained in shooting position, with the muzzle close to the window pane. There was a string tied to the trigger, or to a stick which was connected with the trigger, and the other end of the string tied to the lower end of the window sash. This arrangement was so made that if the window was opened or moved outward from

the bottom such movement would trip the trigger, causing the gun to be fired. In this position it stood cocked. The only variation in the testimony was, that appellant claimed at the trial that he did not intend to point the gun directly toward the window, but had it in such a position that the muzzle was pointed upwards, slightly to the right, and that it must have slipped from the position in which he had placed it, thereby causing it to be discharged through the window at the time it was fired. Appellant himself testified that the gun was fired by means of the arrangement he had made and that the load did pass through the window pane. He had been in the habit of guarding his chilli stand with this trap gun for several weeks prior to the fatality resulting from the contraption, for which he was tried.

On the morning of May 10, 1923, a youth about seventeen years old, named Audrey Windsor, was found dead just on the outside and at the rear of appellant's chilli shack. It was found on examination that a load of shot had struck this youth full in the face; that a hole, made by the shot, was in the window pane, and that the shotgun on the inside of the building had been discharged. These physical facts disclosed the telltale and dangerous position of the gun at the time it was discharged. The defendant testified: "I placed it there for a scare, if anybody started to break in. I had no intention of even hurting anybody."

The matters presented for our consideration will be considered later.

I. It is claimed by appellant that his demurrer to the evidence at the conclusion of the case should have been sustained. In passing upon this question, we have deemed it advisable to state in brief form the outstanding facts in the case.

*Justifiable Homicide.*

Appellant was engaged in operating a chilli stand in Joplin, Missouri, where soft drinks were kept and lunches furnished to customers. When not engaged in

the above business, he sometimes performed the services of a minister of the Gospel. He conducted his chilli business in a, small room, but he and his wife lived elsewhere. No human being occupied this room at night. At the time of the killing, the above building contained a few bottles of soda pop and a little personal property, the total value of which did not exceed six dollars. According to defendant's testimony, his chilli stand had been robbed on several occasions. He was in possession of his son's gun and concluded to erect a spring, or trap-gun, in the north part of his building, where a window was located, to guard his property from the approach of robbers. This window had hinges at the top and, when left free and unfastened at the bottom, could be moved out for some distance. Appellant arranged the spring gun so that it would point to some part of this north window, and was so constructed that, when the lower part of the window was moved out from the bottom, it would cause the gun to explode and discharge its load through some part of the window. Appellant testified that he placed the gun so that its load, when discharged, would pass through the upper corner of the window, and that he had no intention of killing or injuring any one, but that he resorted to this plan in order to scare prospective robbers and keep them away. He said the gun became misplaced or slipped from its position, in some manner, and that, by reason thereof, the load went through a pane of said window and killed deceased on the outside, instead of the load being discharged through the upper part of the window as he intended, and which would not have injured deceased. Appellant said he had been placing this gun at the above place for some time, prior to the killing. He had closed his place of business, and had gone home with his wife the night of the homicide. He recognized deceased, after the homicide, as one of several boys who were in his chilli stand the day before the shooting, and paid for a lunch at that time. He said the lower part of the

window was nailed securely when he went home that night.

W. F. Gibson, chief of detectives in said city, testified that when he got to the scene of the killing, between eight and nine o'clock in the morning, the gun was still in position, and that the hook used to fasten the window was not fastened and it came open.

On the morning of May 10, 1923, Aubry Windsor, a youth seventeen years of age, was found dead on the outside of defendant's building, and near said window. It was found on examination, that the shot from the gun placed there by defendant had passed through one of the window panes and struck deceased in the face. The father of deceased testified that the latter had gone through the high school at Lincoln City, Nebraska, and had started to the Nebraska University. He said deceased left home on April 17, 1923. There is nothing in the record tending to show that deceased was armed, when killed, with a gun, burglers' tools or even a pocket knife. It does not appear that he had a criminal record, nor that his reputation for honesty had ever been questioned. It is conceded by defendant that deceased was in the chilli stand the day before the homicide, eating a lunch and, hence, had an opportunity for observing that only five or six dollars' worth of property was in the building.

In the light of the foregoing facts, the appellant insists that he was justified in killing deceased with the spring gun under the circumstances aforesaid. The discussion of this subject has not been directly considered by this court, although it has assumed a wide range in other jurisdictions. Upon a careful consideration of the question we have reached the conclusion that when defendant placed this silent instrumentality of death in his building as heretofore detailed, he acted at his peril, and could not, on a demurrer to the evidence, successfully rely upon a plea of justification, unless it could be said as a matter of law, that if he had been personally present and killed deceased with said gun under the

circumstances aforesaid he would have been justified in so doing. If defendant had been personally present and killed deceased under the circumstances aforesaid, in order to sustain his plea of justification he would have been compelled to satisfy the jury that he had used no more force than was reasonably necessary in repelling the assault of deceased in attempting to enter his premises to commit the crime of burglary, if such was his intention. If the defendant had been personally in charge of the gun which killed deceased, and the latter was attempting to enter defendant's building to commit any kind of a crime, he would have been guilty of burglary in the second degree. [Sec. 3297, R. S. 1919, as amended by Act of 1921, Laws 1921, p. 196, and Sec. 3683, R. S. 1919.] Under such circumstances, the defendant would have had the legal right to arrest deceased for the commission of a felony, and the jury, in passing upon the plea of justification, might conclude that it was not reasonably necessary for appellant to kill deceased. Again, if defendant had been personally present, and had killed deceased with said gun, under the foregoing circumstances, the jury, in passing upon the plea of justification, might have concluded that there was no reasonable necessity for killing deceased until the latter had, at least, entered the building. We cannot say, as a matter of law, that defendant was justified in killing deceased with the spring gun in this case and, hence, the court committed no error in overruling the demurrer to the evidence. [13 R. C. L. sec. 155, p. 853; Pierce v. Commonwealth, 135 Va. 635, 28 A. L. R. 864; State v. Green, 118 S. C. 279, 19 A. L. R. 1431, 110 S. E. 145; State v. Barr, 48 Am. St. 890; State v. Marfaudille, 14 L. R. A. (N. S.) 346, 15 Ann. Cas. 584; Schmidt v. State, 159 Wis. 15, 149 N. W. 388; Simpson v. State, 59 Ala. 1, 31 Am. Rep. 1; Grant v. Hass, 31 Tex. Civ. App. 688; Aldrich v. Wright, 53 N. H. 1. c. 404; Hooker v. Miller, 37 Iowa, 613; Wharton on Homicide (3 Ed.) sec. 529, p. 789; United States v. Gilliam, 25 Fed. Cas. p. 1319.]

We call attention especially, to the able and exhaustive review of the law upon this subject in Pierce v. Commonwealth, supra.

(a)   If defendant had been personally present handling the gun which killed deceased, under the law of this State it would be a question for the jury as to whether, in killing deceased, he used more force than was reasonably necessary under the circumstances aforesaid. [State v. Rose, 142 Mo. l. c. 427; State v. Lane, 158 Mo. l. c. 585; State v. Montgomery, 230 Mo. l. c. 673.] It is manifest that a mechanical death-trap like the one used in this case, would hardly be expected to refrain from using more force than was reasonably necessary in repelling the assault of a person trying to enter the building. On the contrary, it would kill all alike in its wake and, hence, its legitimate use could not be sustained, unless facts are conceded which would warrant the court in declaring as a matter of law that defendant was justified in killing deceased under the circumstances of the case.

On the record before us, the demurrer to the evidence was properly overruled.

II.   The information herein is not skillfully drawn, but contains all the necessary elements to apprise appellant of the nature and character of the charge against him. [Sec. 3236, R. S. 1919; State v. Watson, 216 Mo. 420.]

Information: Justification.

Section 3236, supra, reads: ''Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter.''

Counsel for appellant contend that at common law the defendant had the legal right to kill deceased by the use of the spring gun as described in the evidence, and cite some authorities which doubtless hold that under *certain circumstances* the use of the spring gun might be justified, where the assailant was killed in the com-

mission of a felony. These authorities, however, do not hold that the defendant can successfully rely upon a plea of justification where the facts disclose that he used *more force* than was reasonably necessary, in repelling the assault, then would have been warranted had he committed the homicide in person, rather than by the use of the spring gun.

The authorities heretofore cited repudiate the contention of justification, as a matter of law, based on the facts of this case. In the main case, relied on by defendant, of State v. Moore, 31 Conn. 1. c. 484, Judge BUTLER, after reviewing some of the authorities on the question involved, said: "We are satisfied, therefore, that by the strict letter of the common law a man may not take life in defense of property in a shop, and therefore may not justify a homicide committed by placing spring guns therein."

The principles of law enunciated by the authorities in the preceding proposition meet with our approval and should govern the facts of this case. As suggested by the Supreme Court of New Hampshire in Aldrich v. Wright, 53 N. H. 1. c. 404-5, the controversies between the courts over these questions have arisen, in dealing with the subject, as one of *law,* instead of submitting the issue to a jury, *as one of fact.* In other words, the court should not say as a matter of law that on the facts in *this* case, the defendant was justified in killing this unarmed seventeen-year-old boy outside of the building. On the contrary, as heretofore stated, the jury had the legal right to determine as an issue of fact whether defendant used more force than was reasonably necessary in killing deceased, and this issue was properly submitted to the jury in instruction numbered four given by the court.

III. Defendant complains of instruction numbered three, which read as follows:

"The court instructs the jury that the defendant is

306 Mo.—37

charged with manslaughter, that is, by causing the death of Audrey Windsor by the criminal or culpable negligence of him, the said defendant.

*Intention of Defendant.*

"Criminal or culpable negligence, within the meaning of the law, is the omission on the part of a person to do some act under given circumstances which an ordinarily careful or prudent man would do under like circumstances, or the doing of some act, under given circumstances, which an ordinarily careful, prudent man under like circumstances would not do, and by reason of which omission, or action another person is endangered in life or bodily safety.

"If, therefore, you find in this case, beyond a reasonable doubt, that the defendant, R. F. Beckham, on or about the —— day of May, 1923, at the County of Jasper and State of Missouri, negligently and carelessly set and placed the trap gun or spring gun described in the evidence in the chilli stand or building of the defendant described in the evidence, and that the deceased, Audrey Windsor, undertook to enter said building and thereby caused the said gun to be discharged, killing him, the said Audrey Windsor, you will find the defendant guilty of manslaughter and assess his punishment at imprisonment in the penitentiary for not less than two years nor more than ten years, or by imprisonment in the county jail not less than six months, or by a fine not less than five hundred dollars, or by both a fine not less than one hundred dollars and imprisonment in the county jail not less than three months."

Appellant strenuously insists in his brief that we should declare, as a matter of law, that he was justified in killing deceased with the spring gun as shown by the testimony. We have disposed of this issue in the former paragraphs of the opinion. He contended, however, at the trial, that he placed the gun there for a scare if anybody started to break in, with no intention of hurting anybody. He testified further that he placed the gun

so it did not point towards the window, but it pointed "up towards the top and to the right of the window." He said the gun "slipped from its position and fell to one side." Giving to defendant the full benefit of his testimony, the court properly submitted to the jury by Instruction Three supra, the question as to whether appellant was guilty of culpable negligence in so placing this manstrap, that it slipped from the position in which he placed it, and killed a seventeen-year-old boy on the outside, when he had no intention of killing or injuring any one.

IV. It is evident, from the penalty inflicted in this case, that the jury accepted defendant's theory of the killing, to the effect that he did not intend to kill or injure any one; and that he attempted to place the loaded gun, so that the explosion of same would cause the shot to pass out at the top of the window and scare the intruder away, without inflicting any personal injury on him. In view of defendant's testimony in respect to this matter, the jury were justified in finding him guilty of manslaughter, on account of his placing so dangerous an agency as a loaded gun, where it would kill a human being in so careless and negligent a manner as that disclosed in this case. If he used the gun as above indicated, it was his duty in placing the same to exercise such care and caution as an ordinarily careful or prudent man would do under like circumstances. [Sec. 3236, R. S. 1919; State v. Weisman, 256 S. W. 740; State v. Horner, 266 Mo. 109; State v. Cardner, 250 Mo. 426, 157 S. W. 84; State v. Watson, 216 Mo. 420, 115 S. W. 1011.] The very fact that the gun slipped of its own motion clearly indicated that it had been carelessly and negligently placed. On the undisputed facts the jury were authorized to convict defendant of criminal negligence, in a case where human life was at stake. Instruction Three properly advised the jury as to the law which should apply in passing upon the above issue.

*Carelessness: Verdict.*

It is unfortunate that a minister of the Gospel should have been so careless as to cause the death of this boy by negligently placing a death-trap to protect five or six dollars' worth of personal property, if he did not intend to kill or injure any one.

We are of the opinion that defendant had a fair and impartial trial; that he was properly convicted of culpable negligence on his own showing, and should suffer the consequences accordingly.

The judgment below was for the right party and is accordingly affirmed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur, except *Walker, J.,* absent.