Taft, J.,
dissenting. This action was brought to recover damages for injuries received when plaintiff, a boy of 19 and unarmed, endeavored during the daytime to enter a shanty located on defendant’s coal mine property with the intention of stealing property from the shanty. The shanty had no floor, was not occupied and was not located near the defendant’s home. Defendant admits that plaintiff’s injuries were of a very serious nature. This appears from the following statement in defendant’s brief in this court:
“The Court of Appeals could not, from the bill of exceptions, find that the amount of the verdict [$7,000] was excessive, but, on the contrary, [it] was inadequate.”
In his answer defendant admitted or alleged that, prior to the plaintiff’s injuries, “dynamite had been constructed beneath the doorway leading into the warehouse [shanty], that the same was connected with a detonating device with electric wires connected to *130 the door of said warehouse”; that, on occasions prior to the time that this dynamite had been so placed and during the absence of the defendant, the lock on the door to the warehouse had been broken and defendant’s machinery and tools located therein had been stolen; that “in order to prevent the unlawful breaking and entering into said warehouse and the unlawful removal of machinery and tools therefrom * * * defendant placed on the exterior of said doorway beneath the surface, dynamite and connected the same with a detonating device so that when the lock on said door was broken and said door was opened approximately eight (8) inches, that the said dynamite would be exploded”; that the plaintiff “unlawfully entered upon the premises of this defendant and did then and there unlawfully with force break the lock on the doorway leading into said warehouse and with the intention to steal, opened said door leading into said warehouse and that by reason of said unlawful acts of said plaintiff, said dynamite was caused to explode”; and “that by reason of the intentional and unlawful acts of the plaintiff * * * he is barred and estopped from claimT ing damages against this defendant.”
At the outset, it may be observed that the defendant’s answer does not even allege that what he did in the protection of his property involved no more force than was reasonably necessary to effect such protection. It is elementary that a defendant, who relies upon the defense of his property as a justification for an assault, must allege that the force which he us,ed was no more than reasonably necessary to protect his property. Likes v. Van Dike, 17 Ohio, 454. Defendant never asked the trial court for leave to amend his answer so that it would set forth that fact. Therefore, the judgment of reversal in the instant case is based upon the failure of the trial court to submit to the jury an issue that was not even raised by the pleadings.
*131 The trial court held that, while the defendant had the right to protect and defend his property against theft and aggression, he could not in doing so use more force than was reasonably necessary under the circumstances; and that the force used under these circumstances was, as a matter of law, more than reasonably necessary. The court therefore instructed the jury that the only question for its determination was the damages to' the plaintiff. The jury returned a verdict for the plaintiff, and’judgment thereon was affirmed by the Court of Appeals on condition of a remittitur.
The only questions raised by the defendant in this court are (1) whether defendant was entitled to judgment as a matter of law and (2), if not, whether the trial court erred in instructing the jury that the only question for its determination was that of damages to the plaintiff.
In State v. Childers, 133 Ohio St., 508, 14 N. E. (2d), 767, paragraph three of the syllabus reads:
“A person is not justified in taking human life or inflicting bodily harm upon the person of another by means of traps, spring guns or other instrumentalities of destruction unless, as a matter of law, he would have been justified had he been personally present and taken the life or inflicted the bodily harm with his own hands.”
It follows that the question, as to whether the defendant in the instant case is liable as a matter of law for the injuries to the plaintiff, is the same as it would have been if the defendant had planted this dynamite in the place where it was planted, connected it to a detonator located at a safe distance from the shanty where he could observe the plaintiff as he attempted to enter the shanty, stationed himself there, waited until the plaintiff had broken the lock and opened the door a distance of eight inches, and then without warning set off the dynamite. Would not the defendant then *132 have been liable to the plaintiff as a matter of law for the resulting injuries to the plaintiff?- If not, the law would be allowing the defendant to inflict upon the plaintiff, unofficially and without trial and without showing that there was any necessity for doing so either to protect his property or to apprehend the plaintiff, a punishment for a crime which even the law would not inflict upon the plaintiff after his trial and conviction.
. To be sure, a recovery in the instant case will enable the plaintiff, who was seeking to steal the defendant’s property, to recover damages for the serious injuries inflicted upon him by the defendant’s dynamite mine. It is suggested that such recovery will favor criminals or encourage lawlessness. However, the punishment of criminals is primarily a matter for the law. The law has never sanctioned the right of a party to use more force merely for the protection of his property than is reasonable and necessary under the circumstances or than he believes in good faith is so reasonable and necessary where he has reasonable grounds for such belief.
In Darling v. Williams, Admr., 35 Ohio St., 58, an action for wrongful death, the defendant on appeal argued “that an honest belief in the existence of the danger [of death or of great bodily harm], whether well founded or not, is all that is required to justify the assailed in taking- the life of the assailant.” In rejecting that argument this court, in the first paragraph of the syllabus, stated:
“Homicide is not excusable on the ground of self-defense, although the slayer believes, in good faith, that he is in imminent danger of death, or great bodily harm, and that his only means of escape from such danger consists in taking the life of the assailant, unless there loere reasonable grounds'for such belief.” (Emphasis added.)
• Other cases indicating the protection which this
*133 court has required against' assaults likely to cause death or serious bodily harm, even where the assailant made such an assault in protection either of his own life or of his domicile, are Marts v. State, 26 Ohio St., 162; Close v. Cooper, 34 Ohio St., 98; State v. Peacock, 40 Ohio St., 333; Graham v. State, 98 Ohio St., 77, 120 N. E., 232, 18 A. L. R., 1272; Barholt v. Wright, 45 Ohio St., 177, 12 N. E., 185, 4 Am. St. Rep., 535.
As stated in the court’s opinion in State v. Morgan, 25 N. C., 186, 38 Am. Dec., 714:
“* * * when it is said that a man may rightfully use ás much force, as is necessary for the protection of his person or property, it should be recollected that this rule is subject to this most important modification, that he shall not, except in extreme cases, endanger human life or do .great bodily harm.”
Again, in the opinion in Simpson v. State, 59 Ala., 1, 31 Am. Rep., 1, it is stated:
“There is no offense that is punished by the laceration of the body or by loss of limb or member. * * * Shall he [an owner], in the protection of his property, lacerate the body, a punishment so revolting that it has long been excluded'from our criminal code?”
See, also, Pierce v. Commonwealth, 135 Va., 635, 115 S. E., 686, 28 A. L. R., 864.
It is generally held that the use, in the protection of property, of a weapon likely to cause death or great bodily harm is, except in extreme cases, the use of more than justifiable force, and will render the owner of the property liable, both civilly and criminally, for the assault. 4 American Jurisprudence, 163; annotations, 25 A. L. R., 542, 543, 545; 32 A. L. R., 1541; 34 A. L. R., 1488.
As to the extreme cases, it is sometimes said that, if a trespasser goes on property with the intent and with the means to commit an assault or a felony, the owner of the proprety may repel force by force if it is necessary to do so in order to protect his property. *134 However, those statements indicate that there must be such necessity and that force is to be repelled by force. For example, the use of a deadly weapon to repel such an unarmed trespasser would almost always be using more than force to repel the force of such trespasser.
It would seem obvious that such a trespasser, having the intent and the means to commit an assault or a felony, could not, merely to protect property, be assaulted in such a way as to cause death or great bodily harm if he could not have been so assaulted in protecting against death or great bodily harm. In the latter instance, the party, seeking to justify an assault on such a trespasser which was likely to cause death or great bodily harm to such a trespasser, must establish that he believed in good faith that he was in imminent danger of death or great bodily harm and that he had reasonable grounds for such belief. In the instant case the defendant, not being present, could not have been in danger of death or great bodily harm and could have had no reasonable grounds for the belief that he was. Furthermore, not being present, the defendant could not have even believed in good faith that the force which he used in the instant case was necessary to compel the plaintiff to desist from his purpose of stealing the defendant’s property. He could not have known what force, if any, was so necessary. Furthermore, the plaintiff being unarmed, the use of dynamite by the defendant to repel him represented more than repelling force by force.
Thus, in State v. Green, 118 S. C., 279, 110 S. E., 145, 19 A. L. R., 1431, a case involving facts quite similar to those in the instant case except that the trap set was a spring gun instead of a dynamite mine, it was said:
“It will thus be seen that, if the defendant had been present in person,, and had killed the deceased, it would have been necessary for him to show by way of *135 defense that the circumstances were such as were not only sufficient- to justify a person of ordinary firmness and reason in believing that he was in danger of losing his life, or suffering serious bodily harm, but that he himself so believed. In using the spring gun, it was impossible for him, at the time of the killing, to comply with these requirements.”
The majority opinion refers to “valuable property” as being stored in the defendant’s warehouse or shanty.
- Probably, as this reference indicates, the value of the property which the plaintiff could have stolen might be a factor in determining the degree of force which could have been used in protecting that property. See State v. Plumlee, 177 La., 687, 149 So., 425; Grigsby v. Commonwealth, 151 Ky., 496, 152 S. W., 580; Johnson v. Patterson, 14 Conn., 1, 35 Am. Dec., 96.
However, except for the plaintiff’s testimony that he saw a Diesel engine through the window but that he could not have carried it away, the evidence, as to the contents of defendant’s shanty, was only that it contained some “machinery” or “equipment.”
Since the defendant had the burden of proof on the issue of justification, then, he should have established the identity and value of any property which the plaintiff might reasonably have been able to carry away. This the defendant did not do.
The majority opinion suggests that while, “if plaintiff were a mere trespasser or had been pilfering something outside the warehouse,” the trial court could have held, as a matter of law, that defendant had used excessive force, such a holding was improper because plaintiff “was engaged in the commission of a felony, punishable by imprisonment in the penitentiary.” The fállacy of such a distinction was clearly indicated in State v. Barr, 11 Wash., 481, 39 P., 1080, 29 L. R. A., 154, 48 Am. St. Rep., 890, where Hoyt, C. J., said at page 487 et seq.:
*136 “It was the settled law in England that means which might reasonably be expected to cause death could not be made use of to prevent other crimes than those classed as felonies. But it was held that to prevent felonious crimes such means might be made use of, and this same distinction has been adopted by many of the courts of this country, but without any good reason existing therefor. The reason why the use of such means was allowed to prevent crimes of that kind in England was that they were there punishable by death. This being so, there was reason for the rule. If one was about to perpetrate a crime for which under the law his life would be forfeited, there was reason in holding that his life might be taken if necessary to prevent his committing it. But in this country few crimes subject the ones who have committed them to the death penalty, and it is only as to those which do that the reason of the rule has any force. What were felonies at common law usually subject the offender here to comparatively light punishment, and upon principle it should be here held that one could only properly make use of means which might be expected to cause death to prevent the commission of a capital offense.
“We are aware that courts of high standing have come to a contrary conclusion, and have held that such means might be made use of to prevent the commission of some felonies, especially to prevent the crime of burglary; but it seems to us that in so doing they have lost sight of the changed conditions of things in this country, and have adhered to the English rule when the reason therefor has no existence. The crime of burglary has been so much extended by the statutes of this state that, excepting in the case of burglary of a dwelling house when occupied by the owner or some member of his family, there is no reason why more extreme means should be allowed for its prevention than to prevent other felonies. As to *137 what may properly be done to prevent the burglary of a dwelling house when occupied is another question. There it is not simply the damage to the property which may result from the burglary, or the sanctity connected with the property when, so protected that it can only be reached by the commission of a burglary that is involved, but in addition thereto is the question of the risk to the lives of the inmates. It is common knowledge that burglaries under such circumstances often result in the death of some of the inmates of the dwelling upon which the burglary is committed, and for that reason it might well be held that a burglary of that kind could rightfully be prevented by such means as might result in death. ’ ’
Again, in the opinion in Gray v. Combs (Ky.), 7 Marsh., 478, it is said at page 483:
“The right of killing to prevent the perpetration of crime, depends more upon the character of the crime and the time and manner of its attempted perpetration, than upon the degree of punishment attached to it by the law, or upon the fact of its being designated in the penal code as a felony or not. A name can neither add to, or detract from, the moral qualities of a crime; and in the eye of reason and justice, the intrinsic nature of the offense, together with the time and manner of its attempted commission, must ever test the legality of the means to be resorted to for its prevention.”
Also, in the opinion in United States v. Gilliam, 25 F. Cas., No. 15205a, it is said:
“The law is that a man may oppose force with force in defense of his person, his family or property against one who manifestly endeavors by violence to commit a felony, as murder, robbery, rape, arson or burglary. In all these felonies, from their atrocity and violence, human life either is, or is presumed to be in peril. The principle does not apply to the thief who secretly steals your purse or other personal property in your *138 fields or in buildings not within the privilege of the domicile. * * * When we find the books and the judges in some places in general terms speaking of the right to take the life of the felon in the execution of his meditated felony, we are to understand them as referring to felonies with force, of the character described.”
See, also, “The Privilege to Protect Property By Dangerous Barriers and Mechanical Devices” by Bohlen and Burns, 35 Yale Law Journal, 525, 540.
In refusing to apply the law as announced in Scheuerman v. Scharfenberg, 163 Ala., 337, 50 So., 335, because it was based upon the false premise “that a man’s warehouse is in the same category as his dwelling,” the majority opinion apparently recognizes the soundness of the foregoing statements quoted'from the Barr, Combs, and Gilliam cases.
There is another reason why the defense of the defendant in the instant case should have been, as it was by the trial court, rejected as a matter of law. Under our statute, a mere breaking and entering without an intent to steal or to commit a felony would not constitute a felony. Thus, for example, if a boy, such as the plaintiff, entered this building merely to satisfy that curiosity which exists in many youngsters, it is apparently conceded that the defendant would not have been justified in inflicting the injuries which were inflicted by the dynamite mine. The existence of such a dangerous trap obviously constituted a threat of serious personal injury not only to such a mere trespasser but also to those who might have had some right to'enter this building. It is no answer to the threat of such unjustified harm to state that such a party could recover compensation from the defendant for an injury.' There is a public interest in preventing an unreasonable risk of unjustified injury to human beings which certainly exceeds any interest which one may have in the protection of his property not located *139 either in or near his home. A mechanical device designed to inflict such injuries involves an unreasonable risk of unjustified injuries to human beings because, unlike an armed watchman, such a mechanical device is not capable of exercising any intelligent discrimination whatever in the selection or choice of those whom it will injure.
Thus, in Starkey v. Dameron, 92 Colo., 420, 21 P. (2), 1112, it is said in the court’s opinion:
“It should be observed that, while the actual intent of this spring gun was only to protect against theft, the dire consequences incurred by a felon might also be incurred by one innocently attempting to recover money deposited for which no gas was delivered.”
In State v. Beckham, 306 Mo., 566, 267 S. W., 817, 37 A. L. R., 1094, it is said in the court’s opinion:
“It is manifest that a mechanical death trap like the one used in this case, would hardly be expected to refrain from using more force than was reasonably necessary in repelling the assault of a person trying to enter the building. On the contrary, it would kill all alike in its wake and, hence, its legitimate use could not be sustained, unless facts are conceded which would warrant the court in declaring as a matter of law that defendant was justified in killing deceased under the circumstances of the case.”
In State v. Plumlee, supra, it is said in the court’s opinion at page 430:
“If one is personally present when another attempts unlawfully to carry away his personal goods, it is his duty before taking any action to warn the thief to desist. But no warning can be given by these secret implements of destruction.
a # # *
“ * * * it is now generally held * * * that the use of such, instruments of death can never be justified on the ground that they were used solely for the protection of property.”
*140 The majority opinion states that “even in the Childers case the question was left to the jury as to whether Childers had used excessive force.” However, in that case this court merely decided that the defendant had not established as a matter of law a justification for the use of spring guns and that, therefore, the defendant was not entitled to a reversal because the trial court submitted to the jury the question as to whether Childers had used excessive force. The syllabus and opinion in that case indicate that this court would have sustained the trial court if it had held that Childers was not even entitled to have that question submitted to the jury.
In the instant case, it is argued by defendant that the plaintiff, in breaking and entering the defendant’s warehouse, assumed the risk of the injuries inflicted upon him by the defendant. We believe that any such contention is answered by what this court did and by what was said in the opinion in Barholt v. Wright, supra, where the syllabus reads:
“In a suit to recover damages for an assault and battery, the fact that the parties fought by agreement, may be shown in mitigation of damages but is no bar to the action.”
In the opinion by Minshall, J., it is said at page 178:
“It would seem at first blush contrary to certain general principals [sic] of remedial justice to allow a plaintiff to recover damages for an injury inflicted on him by a defendant in a combat of his own seeking; or where, as in this case, the fight occurred by an agreement between the parties to fight. Thus in cases for damages resulting from the clearest negligence on the part of the defendant, a recovery is denied the plaintiff, if it appear that his own fault in any way contributed to the injury of which he complains. And a maxim, as o]d as the law, volenti non fit injuria, forbids a recovery by a plaintiff where it appears that *141 the ground of his complaint had been induced by that to which he had assented; for, in judgment of law, that to which a party assents is not deemed an injury. Broom’s Leg. Max., 268.
“But as often as the question has been presented, it has been decided that a recovery may be had by a plaintiff for injuries inflicted by the defendant in a mutual combat, as well as in a combat where the plaintiff was the first assailant, and the injuries resulted from the use of excessive and unnecessary force by the defendant in repelling the assault. These apparent anomalies rest upon the importance which the law attaches to the public peace as well as to the life and person of the citizen. From considerations of this kind it no more regards an agreement by which one man may have assented to be beaten, than it does an agreement to part with his liberty and become the slave of another.”
While defendant testified that he placed the dynamite where he did for the purpose of scaring rather than injuring an intruder, the resulting injuries to the plaintiff clearly disclose that the force used was such as to cause serious personal injuries. Defendant admitted further in his testimony that he had been using dynamite for a substantial period of time and was familiar with its potential danger.
Furthermore, if the defendant had merely intended to scare an intruder, he could have planted the dynamite in a safer place than under or close to the door. His answer admits not only that he planted it “beneath the doorway” and “on the exterior of said doorway beneath the surface” but that he also made arrangements so that it would explode when the door was opened eight inches. He could hardly have made it more certain that what the majority opinion concedes “is inherently a dangerous substance” would cause injury to anyone who opened the door.
*142 I am of the opinion that, construing these judicial admissions of defendant and the evidence most strongly in defendant’s favor, reasonable minds can come only to the conclusion that the use of the dynamite mine by the defendant was the use of a weapon likely to cause, at the least as it did, great bodily harm. It follows, for the reasons hereinbefore stated, that such use constituted, as a matter of law, the use of excessive force by the defendant against the plaintiff.
Even if, as the majority opinion states, plaintiff was not entitled to any affirmative notice warning •him not to commit a felony, that fact does not justify or excuse the use by the defendant of more force than reasonably necessary under the circumstances to prevent the plaintiff from committing the felony. Even if the lock on the door was a sufficient warning that plaintiff was in danger if he broke it, that warning would not justify or excuse the subsequent use by the defendant of excessive force. Obviously, a defendant cannot justify the. use of excessive force by warning a plaintiff that he will use it.
While the question of whether excessive force has been used is ordinarily a question of fact for the jury, there certainly may bo cases where the facts and circumstances are such that, if the applicable iaw is applied, reasonable minds can come only to the conclusion that excessive force was used. In such a case it is the duty of the trial court to determine that question and it is error to submit the question to the jury. Hamden Lodge v. Ohio Fuel Gas Co., 127 Ohio St., 469, 189 N. E., 246. For the reasons hereinbefore stated, I am of the opinion that this is such a case, and that, therefore, the judgments of the Common Pleas Court and of the Court of Appeals should be affirmed.