**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Tommie TATUM, Defendant-Appellant.**

**No. 51917.**

Supreme Court of Missouri,
Division No. 1.

May 8, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, James M. Byrne, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Emanuel Williams, St. Louis, for appellant.

WELBORN, Commissioner.

Tommie Tatum appeals from a judgment and sentence of three years' imprisonment on a charge of manslaughter by culpable negligence.

The appellant, Tommie Tatum, and the victim of the homicide, Hollis Curtis, came to the Casino Club in Pulaski County at around 3:00 or 3:30 in the morning of December 19, 1964. There they met Berniece Phiffer and Barbara Evans. The four went from the Casino Club to the Green Hills Social Club, also in Pulaski County. They arrived at the Green Hills Club at around 4:00 or 4:30 and sat at a table. During the thirty minutes to one hour at the Green Hills Club, all four were friendly. At around 5:00 A.M., Tatum produced a Smith and Wesson .357 Magnum and held it on the table, pointed, according to Berniece Phiffer, who testified on behalf of the state, in the direction of Curtis. Mrs. Phiffer stated: "[O]nly thing I know, when he put the gun on the table * * * it went off so fast, and I didn't know what happened." The bullet struck Curtis in the upper part of his body, causing his death.

The only other witness for the state, a highway patrolman who was called to the scene, testified that the appellant admitted ownership of the weapon found at the Green Hills Social Club. He stated that appellant told him "that he placed the gun on the table, on the edge of the table, and had it pointed towards Mr. Curtis, that something disturbed his arm and the gun was discharged and the bullet struck Mr. Curtis." The trooper testified that the gun could be discharged in two ways: First, by pulling the trigger, thereby cocking the gun and firing it at the same time; Second, by pulling the hammer back with the thumb and having the weapon cocked until the trigger was pulled. He stated that the first method of firing requires much more effort. He also said that appellant told him that he had cocked the gun.

Barbara Evans, testifying for the defendant, stated that appellant and Curtis were talking and laughing when the gun was produced and that Curtis picked up her pocketbook and struck the gun, which discharged. The appellant testified that the gun went off when Curtis hit it with the purse. He stated that the gun was pointed at no one when he removed it from his trousers and placed it on the table. He said that he didn't remember whether or not he cocked the weapon.

A jury returned a verdict of guilt under an information charging manslaughter by culpable negligence and fixed the punishment at three years' imprisonment. Appellant's retained counsel filed a motion for new trial and notice of appeal. However, no brief has been filed on behalf of appellant and we, therefore, look to the matters presented in the motion for new trial.

The objection that the prosecution was upon an "Affidavit or Complaint in Felony Cases" is without merit. An information was duly filed, charging the offense and appellant was tried on the information, not the preliminary complaint.

■ The state's evidence, set out above, would support a finding of guilt on the offense charged. However, the principal instruction on which the case was submitted is obviously erroneous. The first paragraph of that instruction read as follows:

"The Court instructs the jury that criminal negligence, within the meaning of the law, is the omission on the part of a person to do some act under given circumstances which an ordinarily careful or prudent person would do under like circumstances, or the doing of some act, under given circumstances, which an ordinarily careful, prudent person under like circumstances would not do, and by reason of which omission or acts another person is endangered in life or bodily safety."

■ The second paragraph hypothesized the factual situation and authorized a finding of guilt if the defendant "carelessly, with criminal negligence" allowed the pistol to discharge, which pointed in the general direction of the deceased. (The statute defining "Manslaughter" (§ 559.070, RSMo 1959, V.A.M.S.) uses the term "culpable negligence." Although "criminal negligence" and "culpable negligence" are sy-

nonymous, 65 C.J.S. Negligence § 1(13), p. 459, use of the statutory terminology would avoid any question.)

The state defends the instruction on the basis of the approval of practically identical instructions in State v. Coulter, Mo.Sup., 204 S.W. 5, and State v. Beckham, 306 Mo. 566, 267 S.W. 817, 37 A.L.R. 1094.

In State v. Millin, 318 Mo. 553, 300 S.W. 694, 696, the court, with specific reference to a definition of culpable negligence found in State v. Weisman, Mo., 256 S.W. 740, identical with that found in Coulter and Beckham, supra, concluded that the definition there found was of "mere negligence, such as would be actionable in a civil suit." The court stated that a proper definition of culpable negligence should include "the element of reckless disregard of the consequences of the act or the omission from which the criminal intent may properly be inferred." 300 S.W. 697. In Millin, the court noted that the instruction approved in Weisman had been found acceptable in Coulter and Beckham. 300 S.W. 696.

The subsequent course of our law on this subject is traced in State v. Studebaker, 334 Mo. 471, 66 S.W.2d 877, 880. State v. Baublits, 324 Mo. 1199, 27 S.W.2d 16, held erroneous an instruction defining culpable negligence in Weisman language. State v. Melton, 326 Mo. 962, 33 S.W.2d 894, did likewise and, for the first time, specifically overruled Weisman. 33 S.W.2d 895. Ob-

viously, Coulter and Beckham are in the same situation as Weisman, insofar as they approve the definition of culpable negligence in Weisman terms. They, likewise, should no longer be followed. State v. Millin, State v. Baublits and State v. Melton, supra, all hold the definition here used erroneous.

There was also error in the trial court's failure to submit appellant's instruction calling for an acquittal if the jury found beyond a reasonable doubt that the deceased struck the revolver and caused it to discharge. Appellant's testimony supported this submission. Although an accidental homicide is not excusable under § 559.050, RSMo 1959, V.A.M.S., if the result of a culpably negligent act (State v. Grant, Mo.Sup., 372 S.W.2d 9, 14; State v. Hinojosa, Mo.Sup., 242 S.W.2d 1, 10 [21]; State v. Aitkens, 352 Mo. 746, 179 S.W.2d 84, 93 [19–22]), appellant's testimony that he did not point the gun at the deceased would warrant a finding, if believed, that the act of the deceased, not a culpably negligent act of the appellant, was the proximate cause of the gun's firing.

Reversed and remanded.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.