[Cite as *State v. El-Hardan*, 2011-Ohio-4453.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24293 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case Nos. 10-CRB-4701 |
| v. | : | |
| | : | |
| OSAMA F. EL-HARDAN | : | (Criminal Appeal from |
| | : |  Dayton Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of September, 2011.

. . . . . . . . . . .

JOHN DANISH, Atty. Reg. #0046639, and STEPHANIE COOK, Atty. Reg. #0067101, by MATTHEW KORTJOHN, Atty. Reg. #0083743, City Attorney's Office, 335 West Third Street, Dayton, Ohio 45402.
        Attorneys for Plaintiff-Appellee

GEORGE A. KATCHMER, Atty. Reg. #0005031, 108 Dayton Street, Yellow Springs, Ohio 45387
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Osama El-Hardan appeals from his conviction and sentence for Aggravated Menacing. He argues that Ohio's Castle Doctrine, embodied in R.C. 2901.05(B)(1), permitted him to brandish a gun in the parking lot of his business and that his use of the gun to remove a trespasser was not

unreasonable. El-Hardan claims that the trial court erred in finding him guilty, because the State failed to prove the operability of the gun. He claims that the trial court erred in excluding from evidence photos of the allegedly poor quality of workmanship performed on his property by the victim's employer. Finally, he claims that his conviction is against the manifest weight of the evidence.

{¶ 2} We conclude that the Castle Doctrine does not apply to the parking lot of a business. We also agree with the finding by the trial court that El-Hardan's use of a gun was unreasonable under the circumstances. We conclude that the operability of a firearm in the commission of Aggravated Menacing is not an element of the offense that the State is required to prove. We conclude that the trial court did not abuse its discretion in excluding the photos. Finally, we conclude that El-Hardan's conviction is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.

I

{¶ 3} El-Hardan hired James Warner to perform some remodeling work at El-Hardan's business, a used car lot. Joseph Taliaferro worked for Warner at the ongoing project for a week in May 2010. At the end of that week, Warner asked El-Hardan for payment. El-Hardan refused, taking the position that the work had not been completed to his satisfaction.

{¶ 4} When Taliaferro learned of El-Hardan's refusal, Taliaferro became hostile and argumentative and threatened to rip the new siding off the building. El-Hardan told Taliaferro to leave, or he would call the police. As Taliaferro and Warner packed up their equipment, Taliaferro was still arguing with El-Hardan.

When they finished loading their tools, Taliaferro said that a van needed to be moved so that they could leave. The van was moved, and El-Hardan again told Taliaferro to leave. As Taliaferro was getting into the van, he and El-Hardan were continuing to argue. Suddenly, El-Hardan pulled a black, semi-automatic handgun from the back of his waistband and pointed it at Taliaferro's face, telling Taliaferro to leave or he would call the police. In the meantime, Warner called the police himself. Fearing that El-Hardan was going to shoot him, Taliaferro left the property and waited for the police nearby. At no time did Taliaferro have a weapon. Taliaferro neither assaulted El-Hardan nor threatened the use of deadly harm against him.

{¶ 5} El-Hardan admitted to Dayton Police Officer Lally that he had pulled a gun on Taliaferro, explaining that Taliaferro and Warner were coming at him, and he was afraid. El-Hardan showed the officer a chrome-colored BB gun, which Taliaferro denied was the gun El-Hardan had pointed at him. El-Hardan testified that when he told Officer Lally that he had pulled a gun on Taliaferro, he meant that he had merely lifted his shirt and displayed the gun, hoping that Taliaferro would leave. El-Hardan admitted that Taliaferro had no weapons, and that Taliaferro had never threatened to kill him.

{¶ 6} Glen Fugate, who performed body work on some of the cars that El-Hardan sold, testified for the defense. As he arrived at the car lot, Fugate saw and heard El-Hardan and Taliaferro arguing about money. Several times during the argument, El-Hardan told Taliaferro to leave the premises. At some point during the argument, Fugate saw Taliaferro draw back his hand as if to hit El-Hardan, and he heard Taliaferro threaten to "kick [El-Hardan's] ass." But Fugate never heard

Taliaferro threaten to use deadly force against El-Hardan, nor did he see either Taliaferro or El-Hardan brandish a weapon.

{¶ 7} El-Hardan was charged with one count of Aggravated Menacing. Following a bench trial, El-Hardan was found guilty and sentenced accordingly. From his conviction and sentence, El-Hardan appeals.

II

{¶ 8} El-Hardan's First Assignment of Error is as follows:

{¶ 9} "THE APPELLANT WAS PERMITTED TO DISPLAY A GUN UNDER R.C. 2901.05(B)(1) SINCE HE IS A PROPERTY OWNER."

{¶ 10} In his First Assignment of Error, El-Hardan maintains that R.C. 2901.05(B)(1) authorized him to use a gun to cause Taliaferro to leave his place of business, in the same manner as if Taliaferro was unlawfully present at El-Hardan's residence. We disagree.

{¶ 11} Ohio's Castle Doctrine, set forth in R.C. 2901.05(B)(1), states: "a person is presumed to have acted in self-defense * * * when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used * * * has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force." A " '[r]esidence' means a dwelling in which a person resides either temporarily or permanently or is visiting as a guest." R.C. 2901.05(D)(3). In turn, a " 'dwelling' means a building or conveyance of any kind that has a roof over it and that is designed to be occupied by people lodging in the building or conveyance at night, regardless of whether the building or conveyance is mobile or immobile. As used in

this division, a building or conveyance includes, but is not limited to, an attached porch, and a building or conveyance with a roof over it includes, but is not limited to, a tent." R.C. 2901.05(D)(2).

{¶ 12} While ones business may, under the circumstances specified in the statute, meet the statutory definition of dwelling, there is no evidence in this record that El-Hardan's used-car business "is designed to be occupied by people lodging in the building or conveyance at night." R.C. 2901.05(D)(2). El-Hardan cites *Allison v. Fiscus* (1951), 156 Ohio St. 120, for the proposition that "[a] man's place of business * * * is pro hac vice his dwelling." His reliance on this case is misplaced for two reasons.

{¶ 13} First, the sentence that El-Hardan relies upon was not a part of the holding in *Allison*, a civil case. To the contrary, the sentence is part of a quote from an Alabama civil case that, had the Supreme Court of Ohio chosen to follow it, would have rendered the defendant in *Allison* not liable for injuries caused by dynamite set to go off upon entry to the premises. The injuries were sustained by a young man who was breaking into the defendant's business in order to steal the defendant's property. Id. at 125-26, quoting from and discussing *Scheuermann v. Scharfenberg,* (1909), 163 Ala. 337, 369. The Supreme Court of Ohio distinguished the Alabama case from the Court's own holding in *State v. Childers* (1938), 133 Ohio St. 508, which had held that "one who sets a spring gun or trap does so at his peril. If it is set in a dwelling house and prevents the entrance of a felon, the justification may be sufficient to acquit the owner." 156 Ohio St. at 126. In rejecting the broader application of the Alabama case, the Supreme Court of Ohio concluded that under

*Childers,* the question whether the defendant used excessive force was one for the jury. *Allison,* supra, at 126-128.

{¶ 14} Significantly, in both the Alabama case (*Scheuermann*) and the Ohio case (*Childers*), an express distinction was made between potentially deadly force used against a person who is on the premises for the purpose of committing a felony and potentially deadly force used against a mere trespasser. The owner setting the trap does so at his peril: if the potentially deadly force prevents the commission of a felony, the owner is not liable; but if the potentially deadly force injures a mere trespasser, the owner is liable, according to the holdings of those cases. Of course, in the case before us, Taliaferro was a trespasser, at most.

{¶ 15} Moreover, *Allison* was decided many years before the 2008 amendment to R.C. 2901.05 codified the Castle Doctrine, narrowly applying the doctrine to the interior of ones residence or dwelling. Although the verbal altercation began inside his office, El-Hardan's use of the firearm in threatening Taliaferro occurred later, in the parking lot of El-Hardan's business. The plain language of R.C. 2901.05 states that the doctrine is applicable only inside ones residence or dwelling, not outside. Accordingly, courts have rejected attempts to extend the Castle Doctrine from ones residence or dwelling to the surrounding property.

{¶ 16} For example, In *State v. Darby,* Franklin App. No. 10AP-416, 2011-Ohio-3816, the court held that where the unarmed victim was engaged in a verbal altercation with the defendant while standing in front of the defendant's home, the defendant was not entitled to invoke the Castle Doctrine. Id. at ¶39, citing *State v. Smith* (June 27, 1995), Franklin App. No. 94APA12-1702. Although the victim

moved toward the defendant, there was no evidence that the victim made any attempt either to climb onto the defendant's front stoop or to enter the defendant's residence. Id. at ¶38. See, also, *State v. Miller,* Warren App. No. CA2009-10-138, 2010-Ohio-3821 (altercation occurring outside of ones vehicle, with no attempt by the victim to enter the defendant's vehicle, does not implicate the Castle Doctrine).

{¶ 17} Of course, in the case before us, there is the additional fact that the threat to Taliaferro occurred outside El-Hardan's business premises, not outside his residence. There was no evidence that El-Hardan stayed overnight at his business premises.

{¶ 18} El-Hardan's First Assignment of Error is overruled.

III

{¶ 19} El-Hardan's Second Assignment of Error is as follows:

{¶ 20} "THE APPELLANT USED REASONABLE FORCE IN REMOVING THE COMPLAINANT FROM HIS PROPERTY."

{¶ 21} In his Second Assignment of Error, El-Hardan contends that he used reasonable force against Taliaferro, because he merely displayed the gun and threatened to call the police if Taliaferro did not leave, after he had repeatedly asked Taliaferro to leave, while Taliaferro had threatened both to cause physical harm to El-Hardan and to damage El-Hardan's property. Although he cites no authority, we construe El-Hardan's argument to be that the trial court should have found for him on his defense of ejectment.

{¶ 22} The defense of property or right of ejectment is an affirmative defense in which the defendant must prove that a threat of deadly force was "reasonably

necessary under the circumstances to prevent great bodily harm or to protect life." *State v. Manuel* (Nov. 7, 1983), Miami App. No. 82 CA 47. "A property owner may eject a trespasser by the use of reasonable force after the trespasser has received notice to depart and fails to do so within a reasonable time." *State v. White,* Montgomery App. No. 23816, 2010-Ohio-4537, ¶35, citing *Childers,* supra, at 516, additional citations omitted. More specifically, a property owner may not use a gun to force a trespasser to leave his property unless the owner has "reasonable ground to fear the trespasser will do him great bodily harm." *Childers,* supra, at 516.

{¶ 23} There is no evidence in this record that Taliaferro was armed. Taliaferro testified that he never threatened deadly harm against El-Hardan, nor did any other witness hear Taliaferro threaten to use deadly harm against El-Hardan. The only evidence of any threat of physical harm was the testimony of El-Hardan and Fugate that Taliaferro threatened to "kick [El-Hardan's] ass." The trial court concluded that El-Hardan's use of a gun, whether it was merely shown to Taliaferro, or pointed at his face, as testified to by Taliaferro, was an unreasonable amount of force under the circumstances.

{¶ 24} Furthermore, the trial court expressly rejected El-Hardan's claim that he was merely ejecting a trespasser. The court concluded that El-Hardan chose to use the gun as a "continuation of the argument" over money. El-Hardan admitted that the argument went on for about forty-five minutes, but he made no effort to return to his office or to call the police. Instead, he chose to end the argument with a gun.

{¶ 25} Based on the record before us, we conclude that the trial court's decision was not in error. El-Hardan's Second Assignment of Error is overruled.

IV

{¶ 26} El-Hardan's Third Assignment of Error is as follows:

{¶ 27} "THE COURT ERRED IN FAILING TO DETERMINE IF THE GUN WAS OPERABLE."

{¶ 28} In his Third Assignment of Error, El-Hardan makes a cursory argument that his conviction should be reversed because the State failed to prove that the firearm was operable. The State argues that a finding of operability of a firearm is not necessary to support a conviction for Aggravated Menacing.

{¶ 29} El-Hardan was convicted of Aggravated Menacing, in violation of R.C. 2903.21(A), which states: "No person shall knowingly cause another to believe the offender will cause serious physical harm to the person or property of the other person * * * ." Neither the defendant's intent to actually cause serious physical harm, nor his ability to carry out the threat, is an element of the offense of Aggravated Menacing. The operability of a firearm used to communicate the threat is not an element of the offense. See, e.g., *State v. Burch* (Jan. 25, 1993), Monroe App. No. 694 (whether the defendant brandished a starter pistol or a real gun "did not matter since the complainant perceived it as a real firearm capable of seriously injuring or killing him.")

{¶ 30} Taliaferro testified that El-Hardan pulled out what appeared to be a semi-automatic handgun and pointed it Taliaferro's face. El-Hardan claims that he merely showed Taliaferro the gun and that it was a BB gun, but Taliaferro testified that the gun El-Hardan used to threaten him was not the BB gun he later showed the police. In any event, Taliaferro believed that El-Hardan was going to shoot him.

And El-Hardan admitted that it was his hope that Taliaferro would believe that El-Hardan would shoot him if he did not leave. Whether or not the gun was operable, the trial court did not err in finding that El-Hardan knowingly caused Taliaferro to believe that he would cause serious physical harm to Taliaferro.

{¶ 31} El-Hardan's Third Assignment of Error is overruled.

V

{¶ 32} El-Hardan's Fourth Assignment of Error is as follows:

{¶ 33} "THE COURT ERRED IN FAILING TO PERMIT THE APPELLANT TO ENTER PICTURES SHOWING THE POOR QUALITY OF THE WORK PERFORMED BY THE COMPLAINANT SINCE CREDIBILITY IS ALWAYS AN ISSUE ON CROSS EXAMINATION."

{¶ 34} In his Fourth Assignment of Error, El-Hardan contends that the trial court erred in excluding photos of the allegedly poor workmanship performed on his property, because it was relevant to Taliaferro's truthfulness. We conclude that the trial court did not err in excluding the photos.

{¶ 35} Evidence Rule 611 provides that, "[c]ross-examination shall be permitted on all * * * matters affecting credibility." Furthermore, "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness * * * may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness." Evid.R. 608(B).

{¶ 36} El-Hardan believes that the photos demonstrated the poor quality of

workmanship performed on his property by Warner and his employee, Taliaferro. Initially, we note that Taliaferro worked for Warner for only one week on a project that lasted much longer. In any event, the quality of a contractor's work is not probative of his own truthfulness, let alone the truthfulness of one of his employees. Whether or not the work has been well-done is a subjective determination, falling short of Evid.R. 608(B)'s requirement that the evidence be "clearly probative." Furthermore, even if relevant to Taliaferro's truthfulness, photos purporting to show the poor quality of the workmanship performed by his employer would be extrinsic evidence, which is specifically prohibited by Evid.R. 608(B). Finally, the trial court could reasonably have concluded that an inquiry into the quality of the work performed by Warner and Taliaferro would hijack the trial, obscuring the Aggravated Menacing issues with a trial of the quality of the workmanship.

{¶ 37} El-Hardan's Fourth Assignment of Error is overruled.

VI

{¶ 38} El-Hardan's Fifth Assignment of Error is as follows:

{¶ 39} "THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 40} In his Fifth Assignment of Error, El-Hardan contends that his conviction for Aggravated Menacing is against the manifest weight of the evidence, because he did not point the gun at Taliaferro, but only showed the gun to him, and because the only threat that El-Hardan made was to call the police.

{¶ 41} When reviewing a judgment under a manifest weight standard of review "[t]he court reviewing the entire record, weighs the evidence and all reasonable

inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶ 42} El-Hardan was convicted of Aggravated Menacing, in violation of R.C. 2903.21(A), which states: "No person shall knowingly cause another to believe the offender will cause serious physical harm to the person or property of the other person * * * ."

{¶ 43} To the extent that El-Hardan insists that he merely pulled up his shirt to show the gun to Taliaferro – that he did not point the gun at Taliaferro's face – the distinction is irrelevant. The act of "pointing a deadly weapon would undoubtedly justify a jury in concluding that the accused had committed the offense of aggravated menacing." *State v. Brooks* (1989), 44 Ohio St.3d 185, 192. But merely displaying a weapon is enough to support a conviction for Aggravated Menacing when this act causes the victim to believe that the defendant will cause him serious physical harm. See, e.g., *State v. Goodwin,* Franklin App. Nos. 05AP-267 & 05AP-268, 2006-Ohio-66, ¶25-26.

{¶ 44} The trial court, as the finder of fact, was confronted with conflicting evidence concerning whether the gun was pointed at Taliaferro, or merely displayed to Taliaferro. In announcing its verdict, the trial court made it clear that as far as it

was concerned, it made no difference whose testimony on this point was more credible:

**{¶ 45}** "In addition I also believe that even if you believe that the gun was shown, revealed, or pointed to remove a trespasser it's an unreasonable amount of force based on what has been testified here today.  I will make a finding of guilty."

**{¶ 46}** To the extent that El-Hardan claims that the only express threat that he made was to call the police, that express threat does not negate the existence of the implicit threat to shoot Taliaferro.  A "threat need not be verbalized; rather the threat can be implied by the offender's actions."  *State v. Terzo,* Butler App. No. CA2002-08-194, 2003-Ohio-5983, ¶18.

**{¶ 47}** Finally, the trial court expressly rejected El-Hardan's claim that he was merely ejecting a trespasser, finding to the contrary that El-Hardan used the gun as a "continuation of the argument" over whether El-Hardan should pay Warner and Taliaferror for the work performed.  El-Hardan admitted that the argument went on for about 45 minutes, during which time he made no effort to return to his office or to call the police.  Instead, he chose to end the argument by using a gun.

**{¶ 48}** The trial court's finding that however El-Hardan threatened Taliaferro with the gun, El-Hardan had knowingly caused Taliaferro to believe that he would shoot Taliaferro, is not against the manifest weight of the evidence.  El-Hardan's Fifth Assignment of Error is overruled.

VII

**{¶ 49}** All of El-Hardan's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.

Copies mailed to:

John Danish / Stephanie Cook
Matthew Kortjohn
George A. Katchmer
Hon. Deirdre E. Logan