[Cite as *State v. Pedro*, 2012-Ohio-3674.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| V. | ) | CASE NO. 11-MA-128 |
| | ) | |
| PAUL MICHAEL PEDRO, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:        Criminal Appeal from Mahoning County
                                 Court #4, Mahoning County, Ohio
                                 Case No. 11CRB410

JUDGMENT:                        Affirmed

APPEARANCES:
For Plaintiff-Appellee           Paul Gains
                                 Prosecutor
                                 Ralph M. Rivera
                                 Assistant Prosecutor
                                 21 W. Boardman St., 6th Floor
                                 Youngstown, Ohio 44503

For Defendant-Appellant          Atty. Gregg A. Rossi
                                 26 Market St, 8th Floor
                                 Huntington Bank Building
                                 P.O. Box 6045
                                 Youngstown, Ohio 44501

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: July 30, 2012

DONOFRIO, J.

{¶1} Defendant-appellant, Michael Pedro, appeals from a Mahoning County Court #4 judgment convicting him of domestic violence following a bench trial.

{¶2} On May 13, 2011, Amanda Fincham had been living with appellant for approximately two weeks at his parents' home in North Jackson. The two stayed in a separate part of the house from appellant's parents, in what is commonly known as a mother-in-law's suite.

{¶3} According to Fincham, she was lying on the bed talking to a friend on her cell phone. Appellant asked her whom she was talking to and when he did not like her answer, he got on top of her chest and hit her in the face several times. Appellant then picked her up by the shirt and the throat and threw her against the wall.

{¶4} According to appellant, he became angry with Fincham because she had been talking to other men. He confronted her about this when she was lying on the bed talking on her cell phone. Appellant then told Fincham that she was to leave his house and she refused. He then began to pack her things while she beat on his back. Appellant then tried to forcefully remove Fincham from his house because she would not leave.

{¶5} Appellant and Fincham both went outside. Fincham got into her car. Appellant's father and Fincham both called the police. Corporal John Lyons of the Jackson Township Police Department responded to the calls. He listened to both Fincham's and appellant's version of what had transpired and subsequently arrested appellant.

{¶6} As a result of the incident, appellant was charged with domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A).

{¶7} The matter proceeded to a bench trial where the court found him guilty as charged. The court then sentenced appellant to 180 days in jail, 175 suspended; a $500 fine, plus costs; and 12 months of community control.

{¶8} Appellant filed a timely notice of appeal on August 24, 2011. Upon appellant's motion, the trial court stayed the execution of his sentence pending this

appeal.

{¶9} Appellant now raises a single assignment of error that states:

> THE TRIAL COURT'S FINDING THAT APPELLANT, MICHAEL PEDRO, WAS GUILTY OF DOMESTIC VIOLENCE IN VIOLATION OF REVISED CODE 2919.25 IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE REVERSED.

{¶10} Appellant argues that the court's finding of guilty was against the manifest weight of the evidence.

{¶11} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541(1997). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

{¶12} Yet, granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230,

227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

{¶13} The court convicted appellant of violating R.C. 2919.25(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." A person acts knowingly if he is aware that his conduct will probably cause a certain result or be of a certain nature, regardless of his purpose. R.C. 2901.22(B). "Physical harm to persons" includes "any injury * * * regardless of its gravity or duration." R.C. 2901.01(A)(3). A "family or household member" includes "a person living as a spouse" with the offender. R.C. 2919.25(F)(1)(a)(i). A "person living as a spouse" includes a person who is cohabitating with the offender. R.C. 2919.25(F)(2).

{¶14} We must evaluate the testimony presented at trial to determine whether the trial court's finding of guilt was against the manifest weight of the evidence.

{¶15} Fincham testified first. She stated that on May 13, 2011, she had been living with appellant at his residence for one to two weeks. (Tr. 4, 14). That day, Fincham testified, they were in the living room watching NASCAR and the two got into an argument because she did not like NASCAR. (Tr. 9). Fincham testified that she then went to the bedroom and called her friend. (Tr. 9). She was talking on the phone to her friend when appellant walked into the bedroom and asked who she was talking to. (Tr. 5). Fincham stated that appellant did not like her answer so he got on top of her chest and punched her in the face. (Tr. 5-6). She testified that her face swelled and some of her teeth began to bleed. (Tr. 8). She stated that she asked him to stop but that appellant then picked her up by her shirt and her throat and threw her against the wall. (Tr. 7). This resulted in her shirt being torn. (Tr. 7). Fincham stated that she went outside and called the police from her car. (Tr. 11, 20). She also testified that appellant did not tell her that she had to leave his house during this incident. (Tr. 17). It was not until later, she stated, that he told her to leave. (Tr. 17).

**{¶16}** Cpl. Lyons testified next. He stated that he responded to the scene and was met by Fincham. (Tr. 29). He stated that Fincham was distraught, crying, and her shirt was ripped. (Tr. 29-30). Cpl. Lyons took several photographs of Fincham. (Tr. 30-31; Ex. A). The photographs depicted a red mark and a scratch on Fincham's neck, a bruise on her thigh, and her ripped tee-shirt. (Tr. 30-33; Ex. A). Another photograph was meant to show a hand mark that Cpl. Lyons observed on Fincham's arm. (Tr. 31). However, the mark was not visible in the photograph. (Tr. 31; Ex. A). Cpl. Lyons testified that Fincham's injuries were consistent with what she told him appellant had done to her. (Tr. 34).

**{¶17}** Cpl. Lyons also testified that he spoke with appellant at the scene. (Tr. 39-40). Appellant told him that Fincham was hitting him and that he defended himself. (Tr. 40-41). Cpl. Lyons did not observe any injuries on appellant. (Tr. 44). Additionally, Cpl. Lyons stated that appellant's father told him that he saw Fincham hitting appellant. (Tr. 47).

**{¶18}** James Pedro, appellant's father, testified in appellant's defense. He stated that on the day in question, he heard arguing coming from appellant's side of the house. (Tr. 51). Pedro stated that he went to that part of the house and saw Fincham beating appellant on the back while appellant was picking things up from the bed. (Tr. 51). Pedro heard appellant say that Fincham was leaving. (Tr. 53). Pedro stated that he called the police because he "didn't want anything to get heated." (Tr. 53). He further stated that he heard Fincham make a call from her car where she stated, "he's beating me now." (Tr. 53). Pedro testified that he never saw appellant strike Fincham. (Tr. 54).

**{¶19}** Finally, appellant testified. He stated that on the day in question, he had just found out that Fincham had been talking to other men. (Tr. 65). Appellant stated that he went into the bedroom to confront Fincham about this and told her that she could no longer live with him "[a]nd that's when just it all went loose." (Tr. 65). Appellant stated that he got a blanket and started throwing all of Fincham's belongings onto it to pack them up. (Tr. 66). In the meantime, he testified that she

was pleading with him not to make her leave and hitting him on the back. (Tr. 66, 71). Appellant stated that Fincham crawled under the bed, went up in the attic, and threatened to cut her wrists all in an attempt to not leave his house. (Tr. 67). Appellant testified that he tried to pick Fincham up to get her out of the house. (Tr. 67). But he stated that he did not strike her, hit her, or throw her into the wall. (Tr. 69). Appellant further stated that he grabbed Fincham's shirt at one point to stop her from falling. (Tr. 69). Appellant stated that once he gathered Fincham's belongings, he took them out to her car. (Tr. 72).

{¶20} Appellant compares this case to that of *State v. Kartman*, 7th Dist. No. 01-BA-65, 2002-Ohio-5189, where this court reversed the appellant's conviction for domestic violence. In *Kartman*, a park security officer first testified that he witnessed the appellant beating his girlfriend and that she had visible injuries. However, he later changed his testimony stating that he assumed the appellant was beating his girlfriend from their positions and that she did not have any visible injuries but was only red in the face. Additionally, the victim testified that she was drunk, angry, and violent and the appellant was trying to pull her out of his truck. She thought she was kicking the appellant. We noted there were no witnesses to the alleged beating and the alleged victim requested that the appellant not be charged. We further noted that while the security guard stated he had been told by numerous witnesses that the appellant was beating his girlfriend, he did not take statements from any of these witnesses and none of these witnesses were called to testify. In light of these considerations, we found the trial court clearly lost its way in finding the appellant guilty of domestic violence.

{¶21} Appellant claims that like *Kartman*, the only evidence of physical injury was photographs of red marks and alleged scratches on Fincham's neck. Additionally, appellant contends the evidence in this case, as in *Kartman*, was that he was attempting to restrain the alleged victim to prevent her from hurting herself, hurting him, or damaging his property.

{¶22} The present case is distinguishable from *Kartman*. Firstly, in *Kartman*,

there was no witness who testified that the appellant hit the alleged victim. But in this case, Fincham testified that appellant punched her in the face and threw her against the wall. Secondly, the park security officer in *Kartman*, who was one of the main witnesses, recanted his testimony that he saw the appellant beating the alleged victim and that he observed visible injuries on the alleged victim. Thus, his testimony could not have been very credible. But in this case, Cpl. Lyons testified as to Fincham's injuries and the state introduced photographs to further support the testimony. Given these differences between the two cases, *Kartman* does not mandate a finding in this case that appellant's conviction is against the manifest weight of the evidence.

{¶23} Appellant next argues that his testimony that he never struck Fincham supports his position. And he points out that the red marks, scratches, and ripped tee-shirt that Cpl. Lyons testified to were all consistent with his version of the events on the day in question. Moreover, appellant asserts that Fincham's testimony was not credible. He notes that his father testified that he saw Fincham call the police while she was locked in her car. Yet when Fincham called the police, she stated that she was being beaten at that moment.

{¶24} Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, great deference must be given to the fact finder's determination of witnesses' credibility. *State v. Wright*, 10th Dist. No. 03AP-470, 2004-Ohio-677, ¶11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Id.*

{¶25} This case, like many domestic violence cases, presented the trial court with he-said, she-said testimony. The trial court simply found Fincham's testimony was more credible than appellant's testimony. And while the red marks, scratches, and ripped tee-shirt may have been consistent with appellant's version of the events,

it was also consistent with Fincham's version of the events.

**{¶26}** Appellant next argues that once he told Fincham to move out, she was required to leave the premises. He claims that he was entitled to use reasonable force to eject Fincham, who was now a trespasser, from his home.

**{¶27}** A property owner may eject a trespasser by using reasonable force after the trespasser has received notice to depart but fails to do so within a reasonable time. *State v. White*, 2d Dist. No. 23816, 2010-Ohio-4537, ¶35, citing *State v. Childers,* 133 Ohio St. 508, 516, 14 N.E.2d 767 (1938). What constitutes reasonable force to eject is a question for the trier of fact. *State v. Ashworth*, 11th Dist. No. 99-P-0094, 2001 WL 180225, *5, fn. 4 (Feb. 26, 2001), citing *Childers*, at 515. The right to use reasonable force to eject a trespasser can be a defense to assault. *State v. Preston*, 12th Dist. No. CA 99-02-028, 1999 WL 740420, *2 (Sept. 20, 1999).

**{¶28}** Because the trial court found Fincham to be the more credible witness, it likely believed Fincham's testimony that appellant did not tell her to get out of the house until after he assaulted her. Furthermore, the trial court also could have likely found that punching someone and throwing them against a wall is not "reasonable" force to use to eject that person.

**{¶29}** Finally, appellant argues that he did not "knowingly" cause physical injury to Fincham, within the meaning of the domestic violence statute because his conduct in grabbing Fincham's arm and trying to restrain her was not conduct that he was aware would cause her physical injury.

**{¶30}** As discussed above, the trial court found Fincham's testimony to be more credible than appellant's testimony. And Fincham testified that appellant punched her in the face and threw her against a wall. Appellant must have been aware that punching a person and throwing that person against a wall would probably cause that person physical injury, thus satisfying the element of knowingly.

**{¶31}** Accordingly, appellant's sole assignment of error is without merit.

**{¶32}** For the reasons stated above, the trial court's judgment is hereby

affirmed.

Waite, P.J., concurs.

DeGenaro, J., concurs.